**Keith Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Lydia Anderson-Dana,** OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:   (503) 227-6840

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| COLUMBIA SPORTSWEAR CO., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM FERREIRA and DEAN RURAK,<br><br>Defendants. | Case No. 3:23-cv-00594<br><br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

For its complaint against Defendants William "Bill" Ferreira ("Ferreira") and Dean Rurak ("Rurak"), Plaintiff Columbia Sportswear Company ("CSC"), by and through the undersigned attorneys, allege as follows:

<u>**NATURE OF ACTION**</u>

1.   Plaintiff CSC is an outdoor apparel, footwear, and accessories company based in Portland, Oregon, with four well-known brands: Columbia, SOREL, Mountain Hardwear, and prAna.  The Columbia brand includes a Performance Fishing Gear ("PFG") line.

PAGE 1 -  **COMPLAINT**

2. Defendant Ferreira was employed by CSC from July 19, 2004 until October 28, 2022, most recently as the Director of Global Merchandising PFG-PHG, Youth, Accessories, Headwear and Equipment, when he resigned to work for Huk Gear ("Huk"), a fishing apparel brand owned by Marolina Outdoor, Inc., which is a South Carolina-based company incorporated in Delaware.

3. Defendant Rurak was employed by CSC from July 10, 2008 until October 28, 2022, most recently as CSC's Senior Vice President-Chief Product Officer, when he resigned from CSC on the same day as Ferreira to work for Huk.

4. Prior to their resignations, Ferreira and Rurak both entered into several employment-related agreements with CSC that restricted their ability to disclose or use CSC's trade secrets and other confidential information, to compete with CSC for a period of time after leaving CSC, or to solicit employees, customers, consultants, or vendors of CSC for a period of time after leaving CSC, including Proprietary Information and Noncompetition Agreements (the "Contracts").  CSC also publishes a Code of Business Conduct and Ethics (the "Code") which similarly restricts employees' ability to use or disclose CSC's trade secrets and other confidential information.

5. After the resignations, CSC discovered that in the 24 hours prior to tendering his resignation, Ferreira downloaded numerous confidential documents from his CSC work computer to an external hard drive, thus violating several provisions of the Contracts and the Code.  These documents contained confidential strategic, financial, and technical plans, including trade secrets, that are directly relevant to any work Ferreira might perform for Huk.

6. On information and belief, Rurak also downloaded confidential documents from his CSC work drive, thus violating several provisions of the Contracts and the Code.

PAGE 2 - **COMPLAINT**

7. On information and belief, Ferreira and Rurak violated other provisions of the Contracts and the Code related to the use and disclosure of confidential information.

8. CSC brings claims against Ferreira and Rurak under the Defend Trade Secrets Act and Oregon's Uniform Trade Secrets Act, seeking damages and injunctive relief.

9. Additionally, CSC brings claims against Rurak and Ferreira for breaching the terms of the Contracts.

## PARTIES, JURISDICTION AND VENUE

10. Plaintiff CSC is an Oregon corporation, with its principal place of business in Portland, Oregon.

11. At all relevant times, Defendant Ferreira was a resident of Oregon.

12. At all relevant times, Defendant Rurak was a resident of Oregon.

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's related state causes of action pursuant to 28 U.S.C. § 1367(a) because all of Plaintiff's claims arise out of a common nucleus of operative facts.

14. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, among other things, a substantial part of the events giving rise to the claims occurred in this District and because the parties have agreed by contract to have this dispute resolved in Oregon state or federal courts.

## FACTUAL ALLEGATIONS

### Ferreira's Employment with CSC

15. Ferreira worked for CSC beginning in July 2004, first as a Materials Planner and with a final position as CSC's Director of Global Merchandising PFG-PHG, Youth, Accessories,

PAGE 3 - **COMPLAINT**

Headwear and Equipment. He resigned from CSC on October 28, 2022 to work for Huk, on the same day and within hours of when Rurak resigned.

16. In his role as CSC's Director of Global Merchandising PFG-PHG, Youth, Accessories, Headwear and Equipment, Ferreira was in charge of the Columbia brand's PFG and Performance Hunting Gear ("PHG") product lines. Ferreira worked in CSC's Portland, Oregon offices.

17. Ferreira was very involved in both product development and distribution. Specifically, he has extensive knowledge of the Columbia brand's PFG product line, including pricing, technical information, and financial information.

18. In the months prior to his resignation, Ferreira was one of the leaders of CSC's efforts to compare and analyze CSC's and Huk's performance fishing apparel products and sales. He had unique access to information that would allow CSC to gain a competitive advantage over Huk (or the reverse).

**Ferreira's Relevant Contracts with CSC**

19. Over the course of his employment with CSC, Ferreira signed numerous agreements restricting his ability to compete with CSC, use CSC's confidential information, or solicit CSC's clients and employees. Specifically, in April 2016, Ferreira signed a Proprietary Information and Noncompetition Agreement (the "2016 Proprietary Information and Noncompetition Agreement"), in which he agreed to the following restrictions on his use of CSC's proprietary and otherwise confidential information:

> **5. Proprietary Information.** I agree that all Inventions I develop, and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I learn or obtain during the term of my employment that relate to the Company, its business, or its anticipated business or that are received by or for the Company in confidence, constitute "Proprietary Information." I will hold in confidence and not disclose or use, except within the scope of my employment, any Proprietary Information. Upon termination of my employment for

PAGE 4 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

any reason, I will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, and (ii) this Agreement.

There is no time limitation on Ferreira's post-employment obligations under this provision.

20. Ferreira also agreed to a six-month non-competition agreement, during which CSC would pay him a monthly payment equivalent to his monthly salary to refrain from "directly or indirectly, own[ing], manag[ing], operat[ing], join[ing], control[ling] or participat[ing] in the ownership, management, operation or control of, or be[ing] employed by or connected in any manner with, any business engaged anywhere in the world in the outerwear or sportswear apparel business, or any other business that directly competes with the Company or any of its subsidiaries."

21. Ferreira agreed that each of these obligations would continue after the termination of his employment with CSC, and that CSC "is entitled to communicate [his] obligations under this Agreement to any future employer or potential employer of [his]."

22. In the 2016 Proprietary Information and Noncompetition Agreement, Ferreira also agreed to abide by CSC's Code of Business Conduct and Ethics, which required him to "keep confidential information in trust and confidence for the benefit of the Company and take reasonable security precautions and other actions needed to ensure that there is no use or disclosure of confidential information in violation of our obligations."

23. The 2016 Proprietary Information and Noncompetition Agreement is governed by the laws of Oregon.

**Ferreira's Actions Immediately Prior to Resigning from CSC**

24. On October 27, 2022, the night before he resigned from CSC, Ferreira downloaded numerous highly confidential files onto an external hard drive. These documents

PAGE 5 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

are directly relevant to any work he might do for Huk, including documents specifically related to Huk.  CSC considers the information contained in these files to be confidential business information and proprietary to CSC.

25.     Each of these documents was copied to a folder on Ferreira's laptop on the corporate network at 12:52 PM on October 27, 2022 and then transferred to an external hard drive at 8:23 PM that evening.  At that time, the device was off the corporate network, on a Comcast IP address.

26.     Ferreira was not authorized to copy these documents to his private hard drive, CSC would not have allowed this if it had known, and the copying of these documents was improper in both the means and the purpose of his actions.

27.     Since his resignation, Ferreira has not returned the hard drive or any other copies of confidential files to CSC.

28.     On information and belief, and based upon the actions of Ferreira, CSC believes that Ferreira plans to disclose, and cannot avoid inevitably disclosing, CSC's confidential information to Huk.

### Rurak's Employment with CSC

29.     Rurak worked for CSC beginning in 2008, beginning as a Senior Product Manager and with a final position as CSC's Senior Vice President-Chief Product Officer.  Rurak worked in CSC's Portland, Oregon offices.  He resigned from CSC on October 28, 2022 to work for Huk, on the same day and within hours of when Ferreira resigned.

30.     In his role as Senior Vice President-Chief Product Officer, a role CSC created for him, Rurak was responsible for CSC's product creation engine, including the Columbia brand's PFG line.  He supervised hundreds of employees, including Ferreira, and interacted frequently

PAGE 6 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

with CSC's sales groups and business leaders.  He also served as a member of CSC's Senior Leadership Team.

31.   Rurak has extensive knowledge of CSC's apparel business and customer base. He was intimately involved with decisions surrounding CSC's pricing, product mix, architecture, innovations, and distribution.

### Rurak's Relevant Contracts with CSC

32.   Over the course of his employment with CSC, Rurak signed numerous agreements restricting his ability to compete with CSC, use CSC's confidential information, or solicit CSC's clients and employees.  Specifically, in September 2020, Rurak signed a Proprietary Information and Noncompetition Agreement (the "2020 Proprietary Information and Noncompetition Agreement"), in which he agreed to the following restrictions on his use of CSC's proprietary and otherwise confidential information:

> **5.   Proprietary Information.**  I agree that all Inventions I develop, and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I learn or obtain during the term of my employment that relate to the Company, its business, or its anticipated business or that are received by or for the Company in confidence, constitute "Proprietary Information."  I will hold in confidence and not disclose or use, except within the scope of my employment, any Proprietary Information.  Upon termination of my employment for any reason, I will promptly return to the Company and not maintain access to all items containing or embodying Proprietary Information (including all electronic and hard copies), except that I may keep my personal copies of (i) my own compensation and personnel records, and (ii) this Agreement.

There is no time limitation on Rurak's post-employment obligations under this provision.

33.   Rurak also agreed to a 26-week noncompetition provision, during which CSC would pay him a monthly payment equivalent to his base salary to refrain from "engag[ing] in activities that compete with the Company or its subsidiaries including, directly or indirectly, owning, managing, operating, joining, controlling or participating in the ownership, management, operation or control of, or being employed by or connected in any manner with,

PAGE 7 - **COMPLAINT**

any business engaged anywhere in the world in the outerwear or sportswear apparel business, or any other business that directly competes with the Company or any of its subsidiaries."

34. Finally, Rurak agreed that each of these obligations would continue after the termination of his employment with CSC, and that CSC "is entitled to communicate [his] obligations under this Agreement to any future employer or potential employer of [his]."

35. The 2020 Proprietary Information and Noncompetition Agreement states that "[t]his Agreement will be governed by and construed in accordance with the laws of the state of Oregon" and that the "sole venue for any legal proceedings between the parties will be in the state or federal courts in Multnomah County, Oregon, and each party consents to the exclusive jurisdiction of such courts."

**Rurak's Actions Immediately Prior to Resigning from CSC**

36. The week he left CSC, Rurak attended a high-level leadership meeting in Montreal with other CSC executives. At this meeting, CSC executives discussed CSC's confidential and proprietary information, including financial information and strategic plans. Rurak did not disclose to CSC that, upon information and belief, he had already made plans to leave CSC and work for a direct competitor. Had Rurak disclosed this information, he would not have been allowed to attend the meeting.

37. Had they known Rurak was about to resign to work for a competitor, the CSC executives and employees at these meetings would not have discussed this information with Rurak.

38. On information and belief, Rurak downloaded confidential documents from his CSC work drive prior to departing CSC.

PAGE 8 - **COMPLAINT**

39.     On information and belief, and based upon the actions of Rurak, CSC believes that Rurak plans to disclose, and cannot avoid inevitably disclosing, CSC's confidential information to Huk.

### Events Since Ferreira and Rurak Departed CSC

40.     On November 19, 2022, CSC contacted Ferreira and Rurak to remind them of their obligations under the relevant Proprietary Information and Noncompetition Agreements, notify them that CSC was enforcing the non-competition provisions of those Agreements, and inform them that CSC reserved the right to seek reimbursement for any payments made under those provisions.

41.     Despite these reminders, Ferreira and Rurak did not return any of CSC's confidential information to CSC.

42.     When confronted with CSC's concern that Ferreira maintained and did not return CSC's confidential information, Ferreira's lawyer, after consulting with his client, told CSC that Ferreira told him that Ferreira downloaded only one CSC presentation. Subsequently, Ferreira's lawyer admitted that his client's information was not accurate and that Ferreira had downloaded additional presentations. CSC knows, although not admitted by Ferreira, that at least one presentation related to a direct comparison and competition between CSC and Huk, their product lines and their marketing of the product lines.

43.     At this time, Ferreira has not admitted which confidential documents or presentations he downloaded and stole from CSC; nor has Ferreira ever provided or returned those confidential documents or presentations he downloaded and stole from CSC.

44.     CSC has also learned that Ferreira deleted some or all of the confidential documents or presentations he stole from CSC. To this date, Ferreira has refused to provide

PAGE 9 - **COMPLAINT**

copies of what he downloaded or deleted, or when he deleted the confidential information; all in violation of his non-competition agreement and trade secret statutory obligations.

45. Also, when confronted with CSC's concern that Rurak maintained and did not return CSC's confidential information, Rurak's lawyer, after consulting with his client, told CSC that Rurak told him that Rurak actually did not know what, if any, confidential documents or presentations he downloaded. Regardless of whether this information was believable at the time, subsequently, Rurak's lawyer admitted that his client's information was not accurate and that Rurak had actually downloaded presentations or other documents from CSC. CSC believes that the downloaded presentations included CSC's confidential information.

46. At this time, Rurak has not admitted which confidential documents or presentations he downloaded and stole from CSC; nor has Rurak ever provided or returned those confidential documents or presentations he downloaded and stole from CSC.

47. CSC has also learned, upon information and belief, that Rurak deleted some or all of the confidential documents or presentations he stole from CSC. To this date, Rurak has refused to provide copies of what he downloaded or deleted, or when he deleted the confidential information; all in violation of his non-competition agreement and trade secret obligations.

48. CSC has continued to pay Ferreira and Rurak under the relevant Proprietary Information and Noncompetition Agreements, even though they have violated these agreements and their trade secret obligations.

### CSC's Code of Business Conduct and Ethics

49. CSC's Code of Business Conduct and Ethics (the "Code") describes CSC's approach to confidential information:

PAGE 10 - **COMPLAINT**

**COMPANY CONFIDENTIAL INFORMATION**
CSC's confidential information is also an asset and is critical to our growth and competitive advantage. We all have an obligation to keep information we learn as employees of CSC confidential. This obligation continues even after your relationship with the Company ends. Unless disclosure is authorized by the Company or required by law, we must keep confidential information in trust and confidence for the benefit of the Company and take reasonable security precautions and other actions needed to ensure that there is no use or disclosure of confidential information in violation of our obligations.

Confidential information includes all information relating to CSC that is not publicly available or that is treated by the Company as confidential business information or trade secrets. Our confidentiality obligations are more fully described in our Confidentiality Policy.

50.     The Code describes "confidential information" as including: "(1) Non-public financial information; (2) Marketing or sales plans; (3) Pricing strategies; (4) Customer or supplier lists; (5) Pricing and costing data; (6) Research and development plans; (7) Trade secrets; and (8) Any information of a third party, such as a vendor, that we have agreed to keep confidential."

## FIRST CLAIM FOR RELIEF

(Misappropriation of Trade Secrets – Defend Trade Secrets Act, 18 U.S.C. § 1836)

(Against Ferreira and Rurak)

51.     CSC realleges and incorporates paragraphs 1-50 as if fully stated herein.

52.     The confidential information Ferreira and Rurak obtained through downloading documents and attending meetings immediately prior to their resignations included financial, business, scientific, technical, economic, and engineering information which constitute trade secrets within the protection of the Defend Trade Secrets Act.  CSC considers this information to be confidential business information and proprietary to CSC.

53.     CSC took reasonable measures to keep this information secret, including by: employing a robust IT staff; requiring employees to use user IDs and strong passwords; providing employees with a Confidentiality Policy; limiting third party access to CSC's

PAGE 11 **- COMPLAINT**

confidential and proprietary information; requiring employees such as Ferreira and Rurak to sign confidentiality agreements in which they agreed to keep information confidential and return any confidential information they had at the end of their employment with CSC; and publishing a Code of Business Ethics and Conduct that defined and prohibited the disclosure of confidential information.

54. CSC's confidential information derives independent economic value from not being generally known, especially to direct competitors such as Huk.

55. Ferreira and Rurak had a duty to maintain the secrecy of CSC's confidential and proprietary information, including trade secrets. They knew they had such a duty, in part because they signed Proprietary Information and Noncompetition Agreements acknowledging that duty, and because CSC's Code of Business Conduct and Ethics outlined that duty.

56. The night before he resigned, Ferreira downloaded numerous highly confidential files that are directly relevant to any work he might do for Huk, including documents specifically related to Huk. Ferreira has not, as of the date of this Complaint, returned any of CSC's confidential information to CSC.

57. The week before he resigned, Rurak attended meetings where highly confidential information was discussed in detail. Had they known he was resigning, the CSC executives and employees at these meetings would not have discussed this information with Rurak.

58. On information and belief, Rurak downloaded confidential CSC material prior to his departure. Rurak has not, as of the date of this Complaint, returned any of CSC's confidential information to CSC.

59. On information and belief, Ferreira and Rurak plan to disclose, and cannot avoid inevitably disclosing, CSC's trade secrets to Huk.

PAGE 12 - **COMPLAINT**

60. On information and belief, Ferreira's and Rurak's actions breached their duty to maintain the secrecy of CSC's trade secrets.

61. On information and belief, Ferreira's and Rurak's actions constitute actual and/or threatened misappropriation in violation of the Defend Trade Secrets Act.

62. Ferreira's and Rurak's actions have caused, and will continue to cause, immediate and irreparable harm to CSC, for which it has no adequate remedy at law.

63. CSC is therefore entitled to permanent injunctive relief: (1) restraining Ferreira and Rurak from further using or disclosing CSC's trade secrets; and (2) requiring Ferreira and Rurak to return CSC's confidential information to CSC.

64. Pursuant to 18 U.S.C. § 1836(b)(3)(A)-(B), CSC is entitled to compensatory damages, in an amount to be proven at trial, for the misappropriated trade secrets.

65. CSC is also entitled to the unjust enrichment resulting from the misappropriation, including payments CSC made to Ferreira and Rurak under the noncompetition provisions of the Proprietary Information and Noncompetition Agreements.

66. Ferreira's and Rurak's actions constitute willful and malicious misappropriation, and CSC is therefore entitled to attorney fees under 18 U.S.C. § 1836(b)(3)(D), and exemplary damages, not to exceed two times the amount of actual damages, under 18 U.S.C. § 1836(b)(3)(C).

## **SECOND CLAIM FOR RELIEF**

(Misappropriation of Trade Secrets – Oregon Uniform Trade Secrets Act, ORS 646.461, *et seq.*)

(Against Ferreira and Rurak)

67. CSC realleges and incorporates paragraphs 1-66 as if fully stated herein.

PAGE 13 **- COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

68. The confidential information Ferreira and Rurak obtained through downloading documents and attending meetings immediately prior to their resignations included confidential financial, business, scientific, technical, economic and engineering information which constitute trade secrets within the protection of the Oregon Uniform Trade Secrets Act. CSC considers this information to be confidential business information and proprietary to CSC.

69. CSC made efforts which are reasonable under the circumstances to maintain the secrecy of this information, including by: employing a robust IT staff; requiring employees to use user IDs and strong passwords; providing employees with a Confidentiality Policy; limiting third party access to CSC's confidential and proprietary information; requiring employees such as Ferreira and Rurak to sign confidentiality agreements in which they agreed to keep information confidential and return any confidential information they had at the end of their employment with CSC; and publishing a Code of Business Ethics and Conduct that defined and prohibited the disclosure of confidential information.

70. CSC's confidential information derives independent economic value, actual or potential, from not being generally known, especially to direct competitors such as Huk.

71. Ferreira and Rurak had a duty to maintain the secrecy of CSC's confidential and proprietary information, including trade secrets. They knew they had such a duty, in part because they signed Proprietary Information and Noncompetition Agreements acknowledging that duty, and because CSC's Code of Business Conduct and Ethics outlined that duty.

72. The night before he resigned, Ferreira downloaded numerous highly confidential files that are directly relevant to any work he might do for Huk, including documents specifically related to Huk. Ferreira has not, as of the date of this Complaint, returned any of CSC's confidential information to CSC.

PAGE 14 - **COMPLAINT**

73. The week before he resigned, Rurak attended meetings where highly confidential information was discussed in detail. Had they known Rurak was resigning, the CSC executives and employees at these meetings would not have discussed this information with Rurak.

74. On information and belief, Rurak downloaded confidential CSC material prior to his departure. Rurak has not, as of the date of this Complaint, returned any of CSC's confidential information to CSC.

75. On information and belief, and based upon the actions of Ferreira and Rurak, CSC believes that Ferreira and Rurak plan to disclose, and cannot avoid inevitably disclosing, CSC's confidential information to Huk.

76. On information and belief, Ferreira's and Rurak's actions breached their duty to maintain the secrecy of CSC's trade secrets.

77. On information and belief, Ferreira's and Rurak's actions constitute actual and/or threatened misappropriation in violation of the Oregon Uniform Trade Secrets Act.

78. Ferreira's and Rurak's actions have caused, and will continue to cause, immediate and irreparable harm to CSC, for which it has no adequate remedy at law.

79. CSC is therefore entitled to permanent injunctive relief: (1) restraining Ferreira and Rurak from further using or disclosing CSC's trade secrets; and (2) requiring Ferreira and Rurak to return CSC's confidential information to CSC.

80. Pursuant to ORS 646.465, CSC is entitled to compensatory damages, in an amount to be proven at trial, for the misappropriated trade secrets.

81. CSC is also entitled to the unjust enrichment resulting from the misappropriation, including payments CSC made to Ferreira and Rurak under the noncompetition provisions of the Proprietary Information and Noncompetition Agreements.

PAGE 15 - **COMPLAINT**

82.     Ferreira's and Rurak's actions constitute willful and/or malicious misappropriation, and CSC is therefore entitled to attorney fees under ORS 646.467, and punitive damages, not to exceed two times the amount of actual damages, under ORS 646.465(3).

## THIRD CLAIM FOR RELIEF

(Breach of Contract)

(Against Ferreira and Rurak)

83.     CSC realleges and incorporates paragraphs 1-82 as if fully stated herein.

84.     The 2016 Proprietary Information and Noncompetition Agreement constituted a binding contract between Ferreira and CSC.

85.     The 2020 Proprietary Information and Noncompetition Agreement constituted a binding contract between Rurak and CSC.

86.     CSC fully performed under the 2016 Proprietary Information and Noncompetition Agreement and the 2020 Proprietary Information and Noncompetition Agreement.

87.     Ferreira breached the 2016 Proprietary Information and Noncompetition Agreement, which required him to keep confidential CSC's confidential information and to "promptly return to the Company all items containing or embodying Proprietary Information (including all copies)," by downloading onto an external USB numerous highly confidential documents and failing to return them.

88.     Ferreira also breached the 2016 Proprietary Information and Noncompetition Agreement in which he agreed to abide by CSC's Code of Business Conduct and Ethics, which required him to "keep confidential information in trust and confidence for the benefit of the Company and take reasonable security precautions and other actions needed to ensure that there

PAGE 16 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

is no use or disclosure of confidential information in violation of our obligations." Among other things, this required him to not access CSC's confidential information by either an improper means or for an improper purpose.

89.   On information and belief, Rurak breached the 2020 Proprietary Information and Noncompetition Agreement, which required him to keep confidential CSC's confidential information. Among other things, this required him to not access CSC's confidential information by either an improper means or for an improper purpose.

90.   CSC has been damaged, and will suffer additional damages, as a result of Ferreira's and Rurak's breaches of contract, in an amount to be proved at trial.

91.   CSC is also entitled to an injunction requiring Ferreira and Rurak to comply with the confidentiality provisions of the Contracts by:

- Restraining Ferreira and Rurak, from using or disclosing, in whole or in part, CSC's confidential information; and
- Requiring Ferreira and Rurak to return CSC's confidential information to CSC;

## JURY TRIAL DEMAND

CSC demands a jury trial as to all claims and issues for which that right is available.

## PRAYER FOR RELIEF

WHEREFORE, CSC seek judgment against Ferreira and Rurak, and the following relief:

A.   Compensatory damages in an amount to be proven at trial;

B.   Damages from unjust enrichment resulting from the misappropriation, including payments CSC made to Ferreira and Rurak under the noncompetition provisions of the Proprietary Information and Noncompetition Agreements;

PAGE 17 - **COMPLAINT**

C. Exemplary damages, not to exceed two times the amount of actual damages, under 18 U.S.C. § 1836(b)(3)(C);

D. Punitive damages, not to exceed two times the amount of actual damages, under ORS 646.465(3);

E. An injunction:

1. Restraining Ferreira and Rurak, from using or disclosing, in whole or in part, CSC's confidential information; and

2. Requiring Ferreira and Rurak to return CSC's confidential information to CSC.

F. Prejudgment and post-judgment interest at the legal rate;

G. Plaintiff's attorneys' fees, costs and disbursements incurred herein; and,

H. Such other relief as the Court deems just and proper.

DATED this 21st day of April, 2023.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/ Keith Ketterling
    **Keith Ketterling,** OSB No. 913368
    **Lydia Anderson-Dana,** OSB No. 166167

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email:    kketterling@stollberne.com
           landersondana@stollberne.com

PAGE 18 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840