**Allyson S. Krueger, OSB 965199**
Email: akrueger@dunncarney.com
**Olivia A. Courogen, OSB 223845**
Email: ocourogen@dunncarney.com
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Ave., Suite 1500
Portland, Oregon 97204-1357
Telephone:    503.224.6440
Facsimile:    503.224.7324

**Chaim B. Book,** *Admitted Pro Hac Vice*
Email:  cbook@booklawllp.com
Book Law LLP
7 Times Square, 19th Floor
New York, NY  10036
Telephone:  212.244.0344

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR CO.**, an Oregon corporation,<br><br>　　　　　Plaintiff,<br><br>**v.**<br><br>**WILLIAM FERREIRA** and **DEAN RURAK,**<br><br>　　　　　　　Defendants. | Case No. 3:23-cv-00594-HZ<br><br>DEFENDANTS WILLIAM FERREIRA AND DEAN RURAK'S REPLY IN SUPPORT OF MOTION TO STRIKE |

Defendants William Ferreira ("Defendant Ferreira") and Dean Rurak ("Defendant Rurak" and, collectively, "Defendants") submit this Reply in Support of their Motion for an Order to Strike certain allegations in Paragraphs 42 and 45 of Plaintiff Columbia Sportswear Company's ("Columbia" or "CSC") Complaint.

## SUMMARY

In its Response to Defendants' Motion to Strike ("Response"), CSC argues the allegations in Paragraphs 42 and 45 are admissible under Federal Rule of Evidence 408 and suggests Defendants failed to meet their burden under Federal Rule of Civil Procedure 12(f) because they did not show prejudice. However, CSC's arguments are unpersuasive and unsupported.

CSC does not deny the parties engaged in settlement discussions and it offers no facts to the contrary. Rule 408 applies, and, because CSC offers the allegations in Paragraphs 42 and 45 to prove liability in violation of Rule 408, that rule provides the basis upon which the Court should grant Defendants' Motion. The core policy of Rule 408 supports this outcome. CSC's arguments related to FRCP 12(f) similarly fail because Defendants made the requisite showing of prejudice, and the Court should grant Defendants' Motion.

## ARGUMENT

**A.    The Allegations in Paragraphs 42 and 45 are Inadmissible under Fed. R. Evid. 408.**

### 1.    *Rule 408 applies.*

A litigant asserting the applicability of Rule 408 must make a "substantial showing" the communications were part of attempts to settle the dispute. *See Scott v. PacifiCorp*, No. 1:22-CV-00174-AA, 2022 WL 2452281, at *2 (D. Or. July 6, 2022). In their Motion, Defendants met this burden.

Determining whether a statement occurred during compromise negotiations is a fact-intensive inquiry. *Int'l Bhd. of Elec. Workers Loc. 48 v. Rosendin Elec., Inc.*, No. 3:23-CV-00297-HZ, 2023 WL 3981282, at *8 (D. Or. June 12, 2023). "[T]he circumstances surrounding the communications, including both the timing of the offer and the existence of a disputed claim, are relevant to the determination of whether they were made in the compromise or settlement of a dispute." *Kesey, LLC v. Francis*, No. CV. 06-540-AC, 2009 WL 909530, at *8 (D. Or. Apr. 3, 2009), *opinion adopted*, No. CIV. 06-540-AC, 2009 WL 1270249 (D. Or. May 5, 2009), *aff'd*, 433 F. App'x 565 (9th Cir. 2011). For a dispute to exist, each party must have formed differing opinions on the subject matter. *Rondor Music Int'l. Inc. v. TVT Recs. LLC*, No. CV 05-2909-JTL, 2006 WL

5105272, at *11 (C.D. Cal. Aug. 21, 2006) (citing *Cassino v. Reichhold Chem., Inc.*, 817 F.2d 1338, 1342 (9th Cir.1987)).

CSC argues Defendants "have not met the burden of making a substantial showing that the pre-litigation communications referenced in Paragraphs 42 and 45 of the Complaint were part of the attempts to settle the dispute."  Response at 5 (internal quotation marks omitted).  According to CSC, "these allegations show the purpose of the [pre-litigation communications referenced in Paragraphs 42 and 45] was to determine whether there was a dispute or what the contours of the dispute were."  Response at 6 (internal quotation marks omitted).

The facts do not support CSC's position.  As described in the Declaration of Chaim B. Book ("Book Decl."),[1] counsel for the parties communicated several times, before CSC filed its lawsuit, in an effort to resolve the dispute short of litigation.  Book Decl. ¶ 5.  Discussions about Defendants' alleged downloading and/or retention of particular CSC information were central to those communications because CSC insisted on Defendants sharing such information as part of any negotiated resolution.  Book Decl. ¶ 6.  These discussions occurred *after* Defendants' receipt of CSC's demand letters.  Book Decl. ¶¶ 3 and 4, Exs. 1 and 2.  If CSC was still questioning whether there was a dispute, how could CSC have prepared demand letters?  Book Decl. ¶ 3, Ex. 1.  And if CSC truly did not know what the contours of the dispute were, how could CSC include in its demand letter details on Defendants' purported violations of "federal and state trade secret statutes," "proprietary information, noncompetition and nonsolicitation agreements," "restricted stock unit agreements," and "fiduciary dut[ies] and [duties of] loyalty," and attach a draft complaint containing additional details?  *See* Book Decl. ¶ 3, Ex. 1, at 1.

As demonstrated by the parties' communications, a dispute existed because each party formed differing opinions on the subject matter and the parties' respective counsel engaged in pre-litigation settlement discussions based on those differing opinions.  *See* Book Decl. ¶¶ 3 and 4, Exs. 1

---

[1] Filed concurrently with Defendants' Motion.

and 2; *Rondor Music Int'l. Inc.*, 2006 WL 5105272, at *11 ("For a dispute to exist, each party must have formed differing opinions on the subject matter.").

CSC also contends: "nothing in the Book Declaration or the attached exhibits makes any showing at all that the conversations described in Paragraphs 42 or 45 referred to 'valuable consideration,' or 'offer[ed] consideration in exchange for . . . the settlement of the dispute,' or were part of 'compromise negotiations.'" Response at 5 (alterations in original). That is incorrect. Specifically, Paragraph 5 of the Book Declaration states that counsel for the parties communicated several times via phone discussions and written communications about resolution of the dispute short of litigation. *See* Book Decl. at ¶ 5.

Regardless, even when communications do not include specific settlement offers, the communications can still qualify as "compromise negotiations" within the meaning of Rule 408. *See, e.g.*, *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, No. 2:16-BK-17463-ER, 2017 WL 2889633, at *5–6 (Bankr. C.D. Cal., July 6, 2017). Preliminary discussions aimed at the possibility of facilitating a settlement in the future are still "compromise negotiations" within the meaning of Rule 408. *Id.* at *4. This is particularly true in complex cases, where "it is often necessary for parties to participate in multiple negotiating sessions before the parties are ready to begin exchanging formal settlement offers." *Id.* at *5. After all, "[e]xploratory compromise negotiations that have not yet progressed to the point at which the parties are willing to exchange formal compromise offers still fall within the purview of FRE 408." *Id.* at *6.

In *In re Gardens Regional Hospital & Medical Center, Inc.*, the court addressed whether descriptions of conversations between representatives of the debtor and creditor entities, respectively, were "compromise negotiations" within the protection of Rule 408. *Id.* at *1. In its motion to strike portions of a declaration referencing these conversations, the debtor described the relevant events and surrounding circumstances "with specificity." *Id.* at *3. During the conversations, the debtor "made clear that the purpose of the call was to discuss the possibility of settlement." *Id.* The parties also discussed "the terms upon which [they] [were] willing to settle."

*Id.* Ultimately, the court struck the allegations at issue as "compromise negotiations" inadmissible under Rule 408. *Id.* at *4.

The Court should reach the same conclusion here. Determining whether a statement was made during compromise negotiations is a fact-intensive inquiry, and the circumstances surrounding the communications—including both the timing and the existence of a disputed claim—relate to the determination of whether they were made in the compromise or settlement of a dispute. *See Int'l Bhd. of Elec. Workers Loc. 48*, 2023 WL 3981282, at *8; *Kesey, LLC*, 2009 WL 909530, at *8. The Book Declaration establishes the circumstances surrounding the communications. *See* Book Decl. at ¶¶ 3–6. CSC did not challenge the contents of the Book Declaration, nor did it submit a contrary declaration.

Here, the fact that Defendants "never returned materials in response to CSC's demand letters" as CSC claims does not alter the character of the communications as alleged pre-litigation statements made during settlement negotiations. Response at 7. Similarly, the fact that Paragraphs 42 and 45 do not explicitly reference "valuable consideration" or "compromise negotiations" does not alter the character of the communications as "compromise negotiations." Response at 6. While the negotiations left the issue of liability unresolved, Book Decl. ¶ 10, this does not change the nature of the allegations in Paragraphs 42 and 45. *See In re Gardens*, 2017 WL 2889633, at *6 (citing with approval *United States v. Skeddle*, 176 F.R.D. 254, 256 (N.D. Ohio 1997)) (when statements were made in an effort to facilitate settlement among the parties, court did not require a showing that negotiations included the furnishing of an offer of valuable consideration in compromising the claim; it was sufficient that the statements were made during compromise negotiations); *see also Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 3993369, at *5 (S.D. Cal. Aug. 21, 2018) (concluding email and letter that "attempt to resolve a disagreement . . . fall under Rule 408's prohibition" and "are inadmissible" because "Rule 408 prohibits not just an offer of settlement but any preliminary settlement discussions"). The allegations in Paragraphs 42 and 45 fall under Rule 408 and this Court should strike them from the Complaint.

2.      *CSC's attempt to rely on certain case law fails.*

CSC attempts to analogize the facts in Paragraphs 42 and 45 to those in *International Brotherhood of Electrical Workers Local 48 v. Rosendin Electric, Inc.*, No. 3:23-CV-00297-HZ, 2023 WL 3981282, at *10 (D. Or. June 12, 2023), but CSC's reliance on that case is misplaced. There, the defendant sought to strike text from three paragraphs of the complaint.  Specifically, the defendant sought to strike the phrase "in pursuit of informal resolution," a sentence indicating the parties' disagreement about whether the defendant violated a collective bargaining agreement, and a sentence about how the defendant "wished to discuss the issue."  *See* 2023 WL 3981282 at *9–10. The court "[was] not convinced" Rule 408 covered those allegations, and denied the motion to strike. *Id.* at *10.  The Court should reach the opposite conclusion here because the text in those paragraphs is distinguishable from the text at issue here.  Paragraphs 42 and 45 do not contain vague references to the parties' general disagreement, and Defendants do not seek to strike phrases such as "in pursuit of informal resolution."

CSC also attempts to analogize the facts here to those in *City of Tillamook v. Kennedy Jenks Consultants, Inc.*, No. 3:18-CV-02054-BR, 2019 WL 1639930, at *2 (D. Or. April 16, 2019), but that case is distinguishable.  In *City of Tillamook*, the defendant challenged allegations that summarized the procedural history of the case.  *See, e.g.*, *id.* at *4 (refusing to strike allegations that describe "only actions by the state-court judge" and do not describe "any actions by [p]laintiff, [d]efendant, or [other parties]").  The defendant also challenged allegations that clearly did not constitute settlement offers or attempts at negotiation.  *See id.* (refusing to strike allegations related to plaintiff's tendering of defense at retrial because "[c]ourts have made clear that a demand for payment or a tender of defense without an offer for compromise does not constitute a settlement offer or an attempt at negotiation").  The court concluded the defendant had established no basis under Rule 408 to strike the paragraphs at issue, and consequently denied the motion to strike.  *Id.* at *8.  The Court should reach the opposite conclusion here because Paragraphs 42 and 45 are not descriptions of procedural history nor demands for payment or a tender of defense.

CSC's attempts to distinguish *Christopher Glass & Aluminum, Inc. v. O'Keefe*, No. 1:16-CV-11532, 2017 WL 2834536 (N.D. Ill. June 30, 2017) and *IP Cube Partners Co. v. Telecomm. Sys., Inc.*, No. 15 CV 6334-LTS, 2016 WL 3248500 (S.D.N.Y. June 13, 2016) are similarly unpersuasive. To distinguish *Christopher Glass & Aluminum Inc.*, CSC contends that Defendants "never returned materials in response to CSC's demands letters, and Paragraphs 42 and 45 do not detail any sort of other response to CSC's demand letters." Response at 7. CSC misses the point. In that case, the court granted the defendant's motion to strike portions of the complaint relating to his voluntary return of the plaintiff-employer's service log because they were sent to the employer "as part of pre-suit negotiations and were labeled as inadmissible pursuant to Federal Rule of Evidence 408." 2017 WL 2834536 at *5. In other words, it was not about the act of *responding* but rather the *context* of pre-suit settlement negotiations.

CSC also suggests *IP Cube Partners Co.* is "of no import here" because the court "does not describe" the paragraphs the defendant sought to strike "except to say 'the material in question does relate to conduct in the course of settlement negotiations' and to '[t]he details of [the parties'] negotiations to resolve the unresolved question of [] liability.'" Response at 7 (citing *IP Cube Partners Co.*, 2016 WL 3248500 at *4). That is precisely the point—the material here, like the material there, relates to conduct in the course of settlement negotiations and the parties' negotiations to address the unresolved question of liability.

The Court should disregard CSC's unpersuasive attempts to distinguish relevant case law. Federal Rule of Evidence 408 applies and provides the basis upon which the Court should grant Defendants' Motion.

///

///

///

///

///

### 3. *CSC offers the allegations in Paragraphs 42 and 45 to prove liability in violation of Rule 408*.

"Rule 408 allows the use of statements from settlement negotiations for purposes *unrelated to liability*." *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 3993369, at *5 (S.D. Cal. Aug. 21, 2018) (citing Fed. R. Evid. 408(b)) (emphasis added). Unsurprisingly, CSC mirrors this language arguing: "Paragraphs 42 and 45 include allegations that will be introduced for purposes unrelated to liability." Response at 10. However, CSC fails to support its conclusory statement with anything other than the contents of its Complaint, the structure of which proves CSC is offering these statements to prove liability. Indeed, CSC relies on the allegations in Paragraphs 42 and 45 to establish liability on each of its claims for relief. *See* Complaint ¶¶ 42, 45, 51, 67, and 83. CSC need not explicitly reference the term "liability" to be offering allegations as proof of liability. CSC is "offering this evidence as an indirect admission of liability," and "[t]his use is prohibited by Rule 408(a)." *See, e.g.*, *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1257 (D. Or. 2009) (granting defendant's motion to strike because "the evidence ha[d] low probative value, because admission would contravene the policies of Rule 408, and because [plaintiff] appear[ed] to be using this evidence as indirect proof of liability").

According to CSC, the allegations at issue "exist to show [Defendants'] bad faith, lack of credibility, and course of conduct." Response at 8. However, the Court should read into those statements what CSC implies. CSC's allegations exist to show Defendants' purported "bad faith"—*related to liability*. Similarly, CSC's allegations exist to show Defendants' supposed "lack of credibility"—*related to liability*. Likewise, CSC's allegations exist to show Defendants' "course of conduct"—*related to liability*. Rule 408 prohibits the use of these allegations for CSC's stated purpose, and the Court should strike the allegations about the parties' settlement negotiations from the Complaint.

///

///

### 4. Striking the allegations of Paragraphs 42 and 45 comports with the core policy of Rule 408.

To allow the portions of Paragraphs 42 and 45 that implicate inadmissible settlement communications to remain in the Complaint would "severely [discourage] parties from being open to negotiation proceedings[.]" *Roberts v. Springfield Util. Bd.*, No. 6:19-CV-01595-MC, 2021 WL 5748883, at *5 (D. Or. Dec. 2, 2021), *aff'd*, No. 21-36052, 2023 WL 3433431 (9th Cir. May 12, 2023), *and aff'd*, 68 F.4th 470 (9th Cir. 2023) (granting defendant's motion to strike).

"When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying [Rule 408] is not injured." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161–62 (9th Cir. 2007). As explained in Section A(3) above, CSC relies on these pre-litigation settlement negotiations for a purpose directly related to liability, so the policy underlying Rule 408 will be harmed if the Court does not strike these allegations.[2]

### B. Defendants Satisfied the Fed. R. Civ. P. 12(f) Standard.

### 1. Defendants made the requisite showing of prejudice.

"A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019). In their Motion, Defendants demonstrated the serious risks of prejudice that arise from these allegations. *See* Motion at 9–10.

To reiterate, prejudice can arise from allegations that cause delay or confusion of the issues. *S.E.C. v. Sands,* 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998). The allegations in Paragraphs 42 and 45 have already caused and continue to cause delay, and thus demonstrate the type of prejudice sufficient to support granting Defendants' Motion. Additionally, the possibility that issues will be unnecessarily complicated is the type of prejudice sufficient to support granting a motion to strike. *Alaska*

---

[2] CSC's arguments rest on partial, cherry-picked, out of context allegations from the parties' pre-litigation settlement negotiations. Considered in their entirety, and in the context the Court must consider in this fact-intensive inquiry, it is clear CSC plucked these allegations straight out of the settlement-communications context, which is precisely what Rule 408 prohibits.

*Logistics, LLC v. Newtok Vill. Council*, 357 F. Supp. 3d 916, 923–24 (D. Alaska 2019). These allegations unnecessarily complicate the litigation, and thus demonstrate the type of prejudice sufficient to support granting Defendants' Motion.

### 2.  *Even without a showing of prejudice, this Court should grant Defendants' Motion*.

Courts do not always require some showing of prejudice by the moving party before granting a motion to strike. *See, e.g.*, *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1169 (N.D. Cal. 2019); *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) (citing Charles A. Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.)) ("[C]ourts *often* require a showing of prejudice by the moving party.") (emphasis added); *Hayden v. United States*, 147 F. Supp. 3d 1125, 1127 (D. Or. 2015) ("A showing of prejudice is *not required* to strike an 'insufficient' portion of the pleading as opposed to 'redundant, immaterial, impertinent, or scandalous matter' under Rule 12(f).") (emphasis added) (internal citation omitted). In the Ninth Circuit, motions to strike are proper—*even if the material is not prejudicial* to the moving party—if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution. *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (finding risk of prejudice where the allegations at issue involved "stale and barred charges," would have been burdensome to answer, and were likely to lead to unwarranted prejudicial inferences), *rev'd on other grounds*, 510 U.S. 517 (1994)).

Here, for the reasons stated above and in Defendants' Motion, striking the allegations at issue would make discovery and trial less complicated, and would otherwise streamline the ultimate resolution of the case. Therefore, even if the Court concludes the allegations in Paragraphs 42 and 45 do not prejudice Defendants, granting Defendants' Motion is still proper.

///

///

///

///

## CONCLUSION

For the reasons set forth above, and in Defendants' prior filings, this Court should grant Defendants' Motion to Strike under Federal Rule of Civil Procedure 12(f).

Dated this 11th day of August, 2023.

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

/s/ Allyson S. Krueger
Allyson S. Krueger, OSB 965199
Email: akrueger@dunncarney.com
Olivia A. Courogen, OSB 223845
Email: ocourogen@dunncarney.com
Attorneys for Defendants

BOOK LAW LLP

/s/ Chaim B. Book
Chaim B. Book, *Admitted Pro Hac Vice*
Email: cbook@booklawllp.com
Attorneys for Defendants