IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR CO.,                    No. 3:23-cv-00594-HZ
an Oregon corporation,

                  Plaintiff,          OPINION & ORDER

      v.

WILLIAM FERREIRA and DEAN
RURAK,

                Defendants.

Lydia Anderson-Dana
Keith A. Ketterling
Stoll Stoll Berne Lokting & Shlachter PC
209 SW Oak St, Ste 500
Portland, OR 97204

       Attorneys for Plaintiff


Allyson S. Krueger
Dunn Carney LLP
851 SW 6th Ave, Ste 1500
Portland, OR 97204

Chaim Bernard Book
Book Law LLP
7 Times Square, 19th Floor
New York, NY 10036

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff Columbia Sportswear sued Defendants William Ferreira and Dean Rurak, alleging misappropriation of trade secrets and breach of contract. Compl., ECF 1. Defendants move to strike allegations from the complaint as statements made during settlement negotiations. ECF 12. For the following reasons, the Court denies the motion.

## BACKGROUND

      The following factual allegations are taken from the Complaint and viewed in the light most favorable to Plaintiff for the purposes of this motion. Plaintiff Columbia Sportswear "is an outdoor apparel, footwear, and accessories company based in Portland, Oregon[.]" Compl. ¶ 1. Defendant Ferreira worked for Plaintiff "from July 19, 2004 until October 28, 2022, most recently as the Director of Global Merchandising PFG-PHG, Youth, Accessories, Headwear and Equipment, when he resigned to work for Huk Gear ('Huk'), a fishing apparel brand owned by Marolina Outdoor, Inc." Id. ¶ 2. Defendant Rurak worked for Plaintiff "from July 10, 2008 until October 28, 2022, most recently as [Plaintiff] CSC's Senior Vice President-Chief Product Officer, when he resigned from CSC on the same day as Ferreira to work for Huk." Id. ¶ 3. During their employment with Plaintiff, Defendants entered into agreements with Plaintiff that restricted their ability to disclose or use Plaintiff's trade secrets, compete with Plaintiff, or solicit Plaintiff's employees, customers, consultants, or vendors. Id. ¶ 4.

      Plaintiff alleges that shortly before resigning, both Defendants downloaded confidential documents from their work computers in violation of their agreements with Plaintiff. Id. ¶¶ 5-6.

These confidential documents were relevant to Defendants' new employment at Huk. *Id.* ¶ 24.

On November 19, 2022, Plaintiff contacted Defendants "to remind them of their obligations

under the relevant Proprietary Information and Noncompetition Agreements" and enforce the

non-competition provisions of those agreements. *Id.* ¶ 40. Defendants did not return any

confidential proprietary information to Plaintiff. *Id.* ¶ 41.

> When confronted with CSC's concern that Ferreira maintained and did not return
> CSC's confidential information, Ferreira's lawyer, after consulting with his client,
> told CSC that Ferreira told him that Ferreira downloaded only one CSC
> presentation. Subsequently, Ferreira's lawyer admitted that his client's information
> was not accurate and that Ferreira had downloaded additional presentations. CSC
> knows, although not admitted by Ferreira, that at least one presentation related to a
> direct comparison and competition between CSC and Huk, their product lines and
> their marketing of the product lines.

*Id.* ¶ 42. Defendant Ferreira "has not admitted which confidential documents or presentations he

downloaded and stole from CSC; nor has Ferreira ever provided or returned those confidential

documents or presentations he downloaded and stole from CSC." *Id.* ¶ 43. Plaintiff further

"learned that Ferreira deleted some or all of the confidential documents or presentations he stole

from CSC. To this date, Ferreira has refused to provide copies of what he downloaded or deleted,

or when he deleted the confidential information[.]" *Id.* ¶ 44.

> Also, when confronted with CSC's concern that Rurak maintained and did not
> return CSC's confidential information, Rurak's lawyer, after consulting with his
> client, told CSC that Rurak told him that Rurak actually did not know what, if any,
> confidential documents or presentations he downloaded. Regardless of whether this
> information was believable at the time, subsequently, Rurak's lawyer admitted that
> his client's information was not accurate and that Rurak had actually downloaded
> presentations or other documents from CSC. CSC believes that the downloaded
> presentations included CSC's confidential information.

*Id.* ¶ 45. Defendant Rurak "has not admitted which confidential documents or presentations he

downloaded and stole from CSC; nor has Rurak ever provided or returned those confidential

documents or presentations he downloaded and stole from CSC." *Id.* ¶ 46. Plaintiff "has also

learned, upon information and belief, that Rurak deleted some or all of the confidential

documents or presentations he stole from CSC. To this date, Rurak has refused to provide copies

of what he downloaded or deleted, or when he deleted the confidential information[.]" *Id.* ¶ 47.

On December 15, 2022, Plaintiff's counsel sent a demand letter to Defendants attaching

the complaint it intended to file "if this matter cannot be resolved immediately." Book Decl. ¶ 3,

Ex. 1 at 1, ECF 13. On December 20, 2022, Defendants' counsel emailed Plaintiff's counsel,

stating that he intended to review the letter with his clients and "hope[d] that we can reach an

amicable resolution of this matter." *Id.* ¶ 4, Ex. 2 at 1. Plaintiff sued Defendants on April 21,

2023. Defendants now move to strike the first two sentences of Paragraph 42 and the first two

sentences of Paragraph 45 of the Complaint. Def. Mot. 3.

## STANDARDS

The court may order stricken from any pleading any insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Granting a

motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft

Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of

discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted.

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), *aff'd*,

608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp.

3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the

limited importance of pleadings in federal practice and because they are often used solely to

delay proceedings.") (quotation marks and alterations omitted). The court views the pleadings in

the light most favorable to the nonmoving party when considering a motion to strike. *Scott v.

PacifiCorp*, No. 1:22-CV-00174-AA, 2022 WL 2452281, at *1 (D. Or. July 6, 2022). The district

court may require a showing of prejudice when considering a motion to strike. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (finding risk of prejudice where the allegations at issue involved "stale and barred charges," would have been burdensome to answer, and were likely to lead to unwarranted prejudicial inferences), *rev'd on other grounds*, 510 U.S. 517 (1994).

Courts in the Ninth Circuit are divided on whether it is appropriate to move to strike settlement discussions from the pleadings. Some courts consider such motions procedurally premature. *E.g.*, *Baroness Small Ests., Inc. v. BJ's Restaurants, Inc.*, No. SACV 11-468-JST (EX), 2011 WL 13228020, at *2 (C.D. Cal. Sept. 15, 2011) (stating that objections to the admissibility of evidence should be raised on summary judgment or in pretrial motions). But courts in this district do consider motions to strike a settlement discussion from the pleadings. *E.g.*, *Scott*, 2022 WL 2452281, at *2 (granting motion to strike); *City of Tillamook Oregon v. Kennedy Jenks Consultants, Inc.*, No. 3:18-CV-02054-BR, 2019 WL 1639930, at *4-*5 (D. Or. Apr. 16, 2019) (considering motion to strike but concluding that the challenged communications should not be stricken under Rule 408); *Spiva v. Walmart*, No. 6:18-CV-1024-MK, 2019 WL 1063386, at *8 (D. Or. Jan. 18, 2019) (considering motion to strike and recommending that it be denied because the challenged communications were not clearly negotiations or offers to compromise), *findings and recommendation adopted*, No. 6:18-CV-1024-MK, 2019 WL 1062371 (D. Or. Mar. 6, 2019); *Reddy v. Morrissey*, No. 3:18-CV-00938-YY, 2018 WL 4407248, at *2 (D. Or. Sept. 17, 2018) (holding that the defendant failed to show that the challenged communication was part of an attempt to settle or that leaving the communication in the complaint would cause prejudice).

**DISCUSSION**

Defendants have not shown that the allegations in the Complaint were made during compromise negotiations. Nor have Defendants shown that inclusion of the disputed allegations in the Complaint will prejudice them. The Court therefore denies the Motion to Strike.

## I.      Federal Rule of Evidence 408

Evidence of "(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim" and "(2) conduct or a statement made during compromise negotiations about the claim" "is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007).

As other district courts have observed, determining whether a statement was made during compromise negotiations is a fact-intensive inquiry. *Stewart v. Wachowski*, No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *3-*5 (C.D. Cal. Sept. 28, 2004). The court must determine whether the statement was made in the context of an existing dispute, because "the protections of Rule 408 were designed to encourage the compromise and settlement of existing disputes." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987) (holding that Rule 408 did not cover termination agreements that attempted to condition severance pay on the

release of potential claims). *See also Josephs v. Pac. Bell*, 443 F.3d 1050, 1064 (9th Cir. 2006) (holding that district court did not err in admitting statements made by agents of defendant employer during grievance proceeding over a Rule 408 objection because "the grievance proceeding did not concern [plaintiff employee's] not-yet-filed discrimination claim"). If there is an existing dispute, the court must consider when settlement negotiations have crystallized. *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 783-84 (9th Cir. 2006) (holding that district court did not err in admitting memorandum prepared by the defendant because the document "merely recounted a meeting between Sheriff's Department employees and Wall Data to discuss possible over-use of the RUMBA licenses" at issue in the case and was written a week before settlement discussions crystallized).

In *Scott*, the district court granted the defendant's motion to strike an exhibit to the complaint and a single sentence in the complaint because the exhibit was a settlement communication and the sentence in the complaint quoted that communication. 2022 WL 2452281, at *1. The exhibit was a letter sent from defendant's counsel to plaintiff's counsel and was marked "ER 408 Communication (ORS 40.190)." *Id.* at *2. The letter proposed recording a supplemental easement for the defendant and offered to "modestly compensate" plaintiffs in exchange. *Id.* The court held that "on its face" the letter qualified as a settlement communication. *Id.* In contrast, in *Kennedy Jenks Consultants*, the district court denied the defendant's motion to strike allegations from the complaint because the allegations at issue fell outside the scope of Rule 408. 2019 WL 1639930, at *4-*5. The allegations at issue included an allegation that the plaintiff said it would accept a reasonable settlement offer if it was made. *Id.* at *4.

//

//

## II.    Analysis

Defendants have not made an adequate showing that the challenged allegations were settlement communications or that they will be prejudiced if the Court declines to strike the allegations from the Complaint.

### A.    Settlement Communications

Defendants move to strike allegations in Paragraphs 42 and 45 of the Complaint that recount representations from Defendants' counsel to Plaintiff's counsel. Def. Mot. 3. Defendants argue that these statements were made during settlement discussions and are therefore protected by Rule 408. *Id.* at 6. On December 15, 2022, Plaintiff sent a demand letter to Defendants, who then retained counsel. Book Decl. Exs. 1-2. In the demand letter, Plaintiff asked Defendants to return all confidential and proprietary information they had retained. *Id.* Ex. 1 at 2. Acknowledging receipt of the letter, counsel for Defendants wrote to counsel for Plaintiff on December 20 that he would speak with his clients about the issues the letter raised, and added, "I will also express my hope that we can reach an amicable resolution of this matter." *Id.* Ex. 2 at 1. These communications indicate that there was an existing dispute and that both parties intended to begin settlement negotiations.

Counsel for Defendants states that he had several phone conversations with counsel for Plaintiff about resolving the dispute without litigation, and the parties also exchanged written communications. Book Decl. ¶ 5. Defendants' "alleged downloading and/or retention" of Plaintiff's documents "was central to those discussions." *Id.* ¶ 6. Counsel for Defendants states that his written communications were generally labeled "FOR SETTLEMENT PURPOSES ONLY." *Id.* ¶ 8. He intended that the parties' communications would be protected by Rule 408.

*Id.* ¶ 7. Counsel for Plaintiff did not indicate otherwise. *Id.* ¶ 9. As Defendants point out, Plaintiff does not dispute the contents of the Book Declaration. Def. Reply 5, ECF 18.

Plaintiffs argue that "the allegations refer to discussions over the extent of the breach by Ferreira and Rurak, not settlement negotiations." Pl. Resp. 6, ECF 17. Plaintiff asserts that "nothing in the Book Declaration or the attached exhibits makes any showing at all that the conversations described in Paragraphs 42 or 45 referred to 'valuable consideration,' or 'offer[ed] consideration in exchange for . . . the settlement of the dispute,' or were part of 'compromise negotiations.'" *Id.* at 5. Defendants counter that "Paragraph 5 of the Book Declaration states that counsel for the parties communicated several times via phone discussions and written communications about resolution of the dispute short of litigation." Def. Reply 4. Both parties are correct, to a point. Counsel for the parties discussed resolving the dispute short of litigation, but it is still unclear when Defendants' counsel allegedly made the representations at issue. And there is no mention of valuable consideration or evidence of an offer from Defendants.

Defendants argue that "even when communications do not include specific settlement offers, the communications can still qualify as 'compromise negotiations' within the meaning of Rule 408." Def. Reply 4. Defendants rely on *In re Gardens Regional Hospital & Medical Center, Inc.*, No. 2:16-BK-17463-ER, 2017 WL 2889633, at *5-*6 (Bankr. C.D. Cal., July 6, 2017). In *Gardens Regional Hospital*, the bankruptcy court stated that "[e]xploratory compromise negotiations that have not yet progressed to the point at which the parties are willing to exchange formal compromise offers still fall within the purview of FRE 408." *Id.* at *6. This conclusion is consistent with Rule 408's coverage of "conduct or a statement made during compromise negotiations about the claim[.]" Fed. R. Evid. 408(a)(2). In granting the motion to strike, the bankruptcy court relied on counsel's specific testimony about the context in which the

challenged communications had been made, including the length of the meetings between counsel and what was said at those meetings. 2017 WL 2889633, at *3. Here, however, counsel for Defendants described the initial exchange of communications with specificity and then provided more general statements. *See generally* Book Decl. The Court cannot determine whether settlement negotiations had crystallized when the alleged representations from Defendants' counsel were made.

Courts that have granted motions to strike settlement communications at the pleadings stage generally can identify the challenged allegations as settlement negotiations with reference only to the complaint and any exhibits attached to it. *E.g.*, *Scott*, 2022 WL 2452281, at *2 (granting motion to strike document labeled as a settlement communication that offered to compensate plaintiffs in exchange for an easement and a sentence in the complaint referencing that document). The cases on which Defendants rely are in this mold. *See* Def. Mot. 7-8 (citing *Christopher Glass & Aluminum, Inc. v. O'Keefe*, No. 1:16-CV-11532, 2017 WL 2834536 (N.D. Ill. June 30, 2017) and *IP Cube Partners Co. v. Telecomm. Sys., Inc.*, No. 15 CV 6334-LTS, 2016 WL 3248500 (S.D.N.Y. June 13, 2016)). In *Christopher Glass*, the plaintiff employer sued the defendant, a former employee, for misappropriation of a service log with sensitive customer information after the defendant left to work for a competitor. 2017 WL 2834536, at *1. The district court granted the defendant's motion to strike allegations in the complaint that the defendant voluntarily returned the service log with an affidavit admitting that he retained a hard copy of the service log. *Id.* at *5. The letter was explicitly labeled to be for settlement purposes only and as protected by Rule 408. *Id.* And in *IP Cube*, the district court struck allegations that recounted settlement communications. 2016 WL 3248500, at *4. The Court has reviewed the

allegations at issue in *IP Cube*; they detail the course of the parties' settlement negotiations. Compl. ¶¶ 36-39, *IP Cube Partners Co. v. Telecomm. Sys., Inc.*, No. 15 CV 6334-LTS.

Here, in contrast, it is not apparent when reading the Complaint that the challenged allegations were part of settlement negotiations. The evidence Defendants provided with their Motion does not clarify when the alleged representations were made and when negotiations began. Because this case is at an early stage and motions to strike are disfavored, the Court concludes that Defendants have not made an adequate showing.

Plaintiff also asserts that it included the allegations in the Complaint to show Defendants' bad faith, lack of credibility, and course of conduct, not to show liability. Pl. Resp. 7-9. According to Plaintiff, Defendants' "shifting stories do not prove or disprove which documents they took (and indeed, could not, given their lack of credibility)." *Id.* at 9. Defendants counter that the allegations were included to show bad faith, conduct, and lack of credibility related to liability. Def. Reply 8. Courts have declined to strike allegations from the complaint where they are offered for a reason permitted by Rule 408. *E.g.*, *Allison v. USAA Fed. Sav. Bank*, No. EDCV202570JGBSPX, 2021 WL 3185477, at *4-*5 (C.D. Cal. Apr. 14, 2021) (denying motion to strike prelitigation communications between plaintiff's counsel and defendant's general counsel because they were properly included to show plaintiff's good faith attempt to resolve the litigation, a required element of one of her claims). The Court declines to opine on this issue because it is not necessary to resolve Defendants' Motion, and will be better addressed on a more developed record. The Court turns to whether Defendants have shown that the continued inclusion of the challenged allegations in the Complaint will prejudice them.

//

//

B.    Prejudice

Defendants have not shown that inclusion of the text in Paragraphs 42 and 45 of the Complaint will prejudice them. Defendants initially assert that they will be prejudiced in several ways. First, they argue that evidence of the challenged allegations "will cause the trier of fact to draw unwarranted inferences at trial, and result in the allegations receiving unnecessary notoriety." Def. Mot. 10. Second, they argue that "[t]hese allegations will also necessarily require the parties to engage in expensive and potentially unnecessary discovery concerning the pre-litigation settlement negotiations between their respective counsel." *Id.* Finally, they assert that there is a risk that counsel will be required as a witness and thus need to be disqualified under the ethics rules. *Id.* at 8-9, 10. Plaintiff counters that Defendants' concerns are vague and speculative. Pl. Resp. 11-12.

The Court concludes that Defendants have not made a sufficient showing of prejudice. Assessing prejudice will necessarily be speculative to some degree because the case is still at the pleadings stage. That said, no prejudice is apparent. The challenged allegations concern Defendants' alleged retention of confidential documents, which is central to this case. And Defendants have not shown how the challenged allegations will significantly expand the burden of discovery. The Court also agrees with Plaintiff that it is premature to worry that counsel for Defendants will be required as a witness or that he would be disqualified if he were to testify. *See* Pl. Resp. 10-12.

In their Reply, Defendants discuss two more bases of prejudice: delay and the possibility that issues will be unnecessary complicated. Def. Reply 9-10. The Court finds neither persuasive. The only delay due to the allegations is Defendants' Motion to Strike. The challenged allegations concern the core issues of this case, and Defendants do not explain how they will complicate the

case or cause future delays. This case is not like *Fantasy*, where the challenged allegations concerned separate conduct that was barred by the statute of limitations. 984 F.2d at 1527. Under those circumstances, the court could reasonably conclude that keeping those allegations in the complaint would unnecessarily complicate the case. Here, the challenged allegations concern a core issue of the case, and it is not similarly apparent that they will be inadmissible at trial.

Defendants also argue that the Court should grant the Motion even without a showing of prejudice. Def. Reply 10. They rely on several cases addressing motions to strike affirmative defenses. *Id.* Courts in this district do not always require a showing of prejudice to strike an insufficient defense. *Hayden v. United States*, 147 F. Supp. 3d 1125, 1127 (D. Or. 2015) ("A showing of prejudice is not required to strike an 'insufficient' portion of the pleading as opposed to 'redundant, immaterial, impertinent, or scandalous matter' under Rule 12(f)."). Defendants do not seek to strike an insufficient defense. The Court agrees with other courts in this district that have required a showing of prejudice before striking allegations from the complaint based on a Rule 408 issue. *E.g.*, *Reddy*, 2018 WL 4407248, at *2 (holding that the defendant failed to show that the challenged communication was part of an attempt to settle or that leaving the communication in the complaint would cause prejudice). Defendants have not shown prejudice or a reason to strike the allegations without a showing of prejudice, further reinforcing that they have not met their burden. Defendants can revisit this issue at the summary judgment stage on a more developed record.

//

//

//

//

## CONCLUSION

The Court DENIES Defendants' Motion to Strike [12].

IT IS SO ORDERED.


DATED: __September 12, 2023__ .


_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge